In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-22-00057-CR

DEREK DWIGHT BROWN, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 20-06-06721-CR**

## MEMORANDUM OPINION

A jury convicted Derek Dwight Brown of the third-degree felony offense of driving while intoxicated (DWI), after two prior DWI convictions. *See* Tex. Penal Code Ann. §§ 49.04, 49.09(b)(2). Brown pleaded "true" to two enhancements, the parties agreed to the sentence, and the trial court sentenced Brown to twenty-five years of confinement. *See id.* § 12.42(d) (providing punishment range for habitual offenders of twenty-five to ninety-nine years). In two issues, Brown contends his appointed trial counsel was ineffective for failing to request funds under Texas Code

of Criminal Procedure article 26.05(d) to investigate and retain an expert to evaluate: (1) the failure of the video equipment used to record the traffic violation that resulted in the stop; and (2) whether the headlights and taillights on his vehicle functioned properly the night he was arrested. As explained herein, we affirm the trial court's judgment.

## BACKGROUND

One evening around 10 p.m., Officer Patrick Murphy saw Brown turn right in front of his patrol car, and he noticed his headlights weren't on. When Brown completed the turn, Officer Murphy didn't think Brown had his taillights on either, but because the headlights from Murphy's car were illuminating the rear of Brown's car as Brown completed his turn, Murphy testified he wasn't sure. Officer Murphy added that he followed Brown's car a short distance to determine whether Brown's taillights were illuminated. When he observed Brown make another right-hand turn, he saw Brown's headlights and taillights were off. As Murphy was preparing to stop Brown, he observed Brown make a "wide" turn and cross over the center line, another traffic violation. However, Murphy testified he stopped Brown for driving without his lights on, not the improper turn.

When Murphy approached the passenger side of Brown's car, he smelled an odor of alcohol and observed Brown was slurring his speech. Murphy told Brown that the initial reason for the stop was for driving without his lights on. Murphy

2

contacted another officer, Alex Miseldine, who was certified to administer standardized field sobriety tests. When Miseldine arrived on the scene, Brown admitted that he was intoxicated and had four 16-ounce Busch Light beers. Before Miseldine could administer all the standardized field sobriety tests (SFSTs), Brown told them to stop and take him to jail. A Toxicology Section Supervisor for the Texas Department of Public Safety Crime lab testified, and toxicology results admitted at trial showed that Brown's blood alcohol content was .28 or three-and-a-half times the legal limit of .08.

Video evidence was admitted at trial, which included Murphy's dashcam. The video shows that after Murphy stopped Brown, he turned on his flashers.

Murphy testified that he did not know why his dashcam did not start recording thirty seconds before he activated his lights. Here, the recording started immediately when he activated his lights, at which point, by Murphy's account, the traffic violations Brown committed had already occurred. Murphy testified that he did not stop Brown until he was "100 percent sure I did not see any taillights." Murphy added that he has never had his dashcam fail to record properly before. Murphy testified he did not know why it did not work, and he did not edit the video. Murphy agreed that it "absolutely" would have been helpful for the jury to see what occurred in the thirty seconds before his dashcam started recording.

Along with the dashcam video, Miseldine's and Murphy's bodycam video was admitted at trial. Whether Brown's headlights or taillights were working and the reason for the initial stop was the central issues at trial. Murphy testified that even though the video did not capture whether Brown's lights were off before the stop, his dashcam shows that Brown's lights were off when he approached Brown's vehicle, came on as he returned to his patrol vehicle, and remained on throughout the stop. Murphy confirmed that the headlights and taillights in Brown's car functioned on the evening the stop occurred.

The defense called Rosendo "Roy" Jimenez, a retired sergeant with the Montgomery County Sheriff's Office (MCSO), to testify as an expert regarding the traffic stop.[1] Jimenez had worked for MCSO for thirty-seven years. Jimenez was Brown's brother-in-law and testified that part of his duties included reviewing traffic stops for training purposes and "proper techniques." It was the first time Jimenez testified as an expert. Jimenez described his investigation of the stop, which included reviewing the video and going to the scene to take photographs and measurements. A diagram Jimenez prepared of the scene and the photographs he took were admitted at trial. He explained the importance of the dashcam video to substantiate an officer's

---

[1]Jimenez testified that he retired as a sergeant from the MCSO in 2015 but continued to work as a reserve officer until the morning of trial. He testified he quit that morning, because there may have been "some issues" with his involvement in this case and policy.

justification for making a traffic stop. In this case, Jimenez explained the missing 30-seconds of the video from Murphy's dashcam was a concern, because it was important to substantiate Murphy's claim about the reasons he stopped Brown. Jimenez added that "[w]ithout the video, we don't know . . . what actually happened out there." Jimenez also testified another problem with the stop was that if Murphy observed Brown without lights on, he should have stopped him sooner rather than following him and allowing him to proceed onto a more heavily trafficked street. According to Jimenez, there were obstructions at the scene, which in his opinion could have impeded Murphy's view. Jimenez also testified that he saw Brown's car after the stop, and his lights worked.

The charge included an article 38.23 instruction advising jurors that if they found the initial stop was illegal, they could not consider any of the evidence after the stop. The jury found Brown guilty of felony DWI. In the punishment hearing, Brown pleaded true to two felony enhancements. Relying on an agreement as to punishment, the trial court sentenced Brown to twenty-five years of incarceration.

ANALYSIS

In two issues, Brown complains of ineffective assistance of counsel, arguing that his attorney failed to request funds to hire an investigator and an expert to evaluate whether the headlights and taillights on his vehicle functioned properly on the night his arrest occurred, and the failure of the video equipment used to record

5

the traffic violation that led to the stop. *See* Tex. Code Crim. Proc. Ann. art. 26.05(d) (providing for reimbursement for appointed counsel to hire an investigator and experts). The State counters that a claim for ineffective assistance of counsel based on a failure to call a witness requires showing that the witness was available to testify and their testimony would have benefitted the appellant. The State further argues that because Brown's trial counsel was not afforded an opportunity to respond to his claims of ineffective assistance, Brown failed to show that trial counsel was constitutionally ineffective.

"Evaluating claims of ineffective assistance of counsel under the Sixth Amendment involves a two-pronged test: (1) whether counsel was deficient, and (2) whether the defendant suffered prejudice as a result of counsel's error." *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish counsel's deficient performance, an appellant must show by a preponderance of evidence that counsel's actions fell below an objective standard of reasonableness. *Id.*; *see also Strickland*, 466 U.S. at 687–88. "Under *Strickland,* the defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission." *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Our review of counsel's performance is highly deferential, and we presume they provided reasonable assistance. *See id.* at 833. We afford counsel a strong presumption that their conduct

6

falls within a wide range of reasonable professional assistance, and a defendant must overcome this presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Hart*, 667 S.W.3d at 781; *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021) (citation omitted). To overcome this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the ineffectiveness." *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996); *see also Johnson*, 624 S.W.3d at 586; *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

"Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004); *see also Hart*, 667 S.W.3d at 782. Ordinarily, trial counsel should be given an opportunity to explain their conduct before being considered ineffective. *Hart*, 667 S.W.3d at 782. Without this, and in the face of an undeveloped record on direct appeal, we "'commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex. Crim. App. 2013)). We will consider counsel's actions deficient only if we find no reasonable trial strategy could justify

7

counsel's acts or omissions, regardless of their subjective reasoning. *See id.* (quoting *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

Here, Brown did not file a motion for new trial, and the record is undeveloped regarding counsel's trial strategy and decisions pertaining to experts. With no opportunity for trial counsel to explain his actions, we assume he had a strategic reason for his decision. *See Hart*, 667 S.W.3d at 782. The record reveals that although trial counsel did not request funds for an expert, counsel had Jimenez testify as a defense expert regarding the traffic stop, dashcam recording, Brown's vehicle lights, and what he felt Murphy did incorrectly during the stop. Jimenez also testified that he investigated, which he described for the jury. The record is silent about trial counsel's reasons for not retaining additional experts.

To establish ineffective assistance of counsel for failing to call expert witnesses, a defendant must show that he would have benefitted from the testimony. *Ex parte Flores*, 387 S.W.3d 626, 638 n.54 (Tex. Crim. App. 2012) (citation omitted). Without this showing, an attorney's failure to call a witness does not establish that trial counsel was ineffective. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) (citing *Hunnicutt v. State*, 531 S.W.2d 618 (Tex. Crim. App. 1976)). Brown has not shown that another expert's testimony would have benefitted him, thus he has not established trial counsel was ineffective. *See Ex parte Flores*, 387 S.W.3d at 638 n.54; *King*, 649 S.W.2d at 44. We will not speculate to

8

find counsel ineffective on an undeveloped record. *See Ex parte Flores*, 387 S.W.3d at 633. From this trial record, we can imagine a strategic motivation for not retaining or calling another expert, and Brown has failed to overcome the presumption that this was sound trial strategy. *See id.*; *see also Strickland*, 466 U.S. at 689; *Hart*, 667 S.W.3d at 782; *Lopez*, 343 S.W.3d at 143. We hold that Brown failed to establish trial counsel's performance was deficient. *See Strickland*, 466 U.S. at 687; *Hart*, 667 S.W.3d 784. We overrule issues one and two.

## CONCLUSION

Having overruled Brown's issues, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on July 21, 2023
Opinion Delivered September 13, 2023
Do Not Publish

Before Golemon, C.J., Horton and Wright, JJ.

9